**United States District Court**
**Northern District of Indiana**
**Hammond Division**

| | |
|---|---|
| UNITED CONSUMERS CLUB, INC., and DIRECTBUY, INC.,<br><br>    Plaintiffs,<br><br>        v.<br><br>PRIME TIME MARKETING MANAGEMENT, INC.,<br>DELL CRAAYBEECK,<br>BRENDA CRAAYBEECK,<br>HOME IMPROVEMENT WAREHOUSE DESIGNS, INC., and HOME STORAGE GROUP, INC.,<br><br>    Defendants. | Case No.: 2:07-CV-358 JVB<br>(Lead Case) |
| PRIME TIME MARKETING MANAGEMENT, INC.,<br>DELL CRAAYBEECK, and<br>BRENDA CRAAYBEECK,<br><br>    Counterclaimants,<br>        v.<br><br>UNITED CONSUMERS CLUB, INC., and DIRECTBUY, INC.,<br><br>    Counterdefendants. | |
| PRIME TIME MARKETING MANAGEMENT, INC. and<br>DELL CRAAYBEECK,<br><br>    Plaintiffs,<br>        v.<br><br>DIRECT BUY, INC.,<br>UNITED CONSUMERS CLUB, INC., and<br>BETA FINANCE COMPANY, INC.<br><br>Defendants. | Case No.: 3-08-CV-60 JVB<br>(Member Case) |

# OPINION AND ORDER

This matter is before the Court regarding Beta Finance Company's motion to dismiss the Amended Complaint filed by Prime Time Marketing Management, Inc., and Dell Craaybeek (collectively "Prime Time Litigants") for insufficient service of process, pursuant to Federal Rules of Civil Procedure 12(b)(5) and 4(m).[1]

On April 1, 1992, the Prime Time Litigants entered into a Franchise Agreement with United Consumers Club, Inc., and DirectBuy, Inc., to operate a DirectBuy members-only club in Dayton, Ohio. The parties performed under the agreement until it was terminated on May 11, 2007. Throughout the Franchise Agreement and since, a number of intertwined business relationships developed—including that between Beta Finance, a subsidiary of DirectBuy, and the Prime Time Litigants.

On November 13, 2007, the Prime Time Litigants filed their First Amended Complaint in Case No. 3:08-CV-60, alleging claims against DirectBuy, Inc., and Beta Finance. However, on January 22, 2009, Beta Finance moved to dismiss the First Amended Complaint for not having received notice of the claim until January 2, 2009.

**B. Factual and Procedural Background**

On September 11, 2007, the Prime Time Litigants filed a Complaint against DirectBuy in the Court of Common Pleas, Montgomery County, Ohio. The case was removed to the United States District Court for the Southern District of Ohio on October 12, 2007. The Prime Time Litigants then filed an Amended Complaint, naming Beta Finance as a Defendant and stating claims against it for the first time, on November 13, 2007. The case was transferred to the United States District Court for the Northern District of Indiana on February 4, 2008, and was assigned Case No. 3:08-CV-60.

---

[1] Beta Finance Company is named as a defendant in case No. 3-08-CV-60. That case has been consolidated with Case No. 2-07-CV-358, which became the lead case. Accordingly, Beta Finance Company's motion is properly filed on the docket of the lead, even though it is not a named party in that case.

On October 11, 2007, United Consumers Club and DirectBuy filed suit against Prime Time, Dell Craaybeek, and Brenda Craaybeek in this Court, Case No. 2:07-CV-358. The two cases were consolidated, as Case No. 2:07-CV-358, before this Court on October 16, 2008.

On January 2, 2009, Beta Finance received notice of the Prime Time Litigants' Amended Complaint filed in Ohio on November 13, 2007—416 days earlier. Beta Finance now seeks to dismiss the Amended Complaint against it for lack of service.

**C. Legal Standard**

The purpose of a motion to dismiss pursuant to Rule 12(b)(5) is to determine whether there has been sufficient service of process on the defendant. *See Pike v. Decatur Memorial Hospital*, 2005 WL 2100251, at *1 (S.D. Ind. Aug. 26, 2005). "Where there has been insufficient service of process, the court does not have personal jurisdiction over the individual." *Rabiolo v. Weinstein*, 357 F.2d 167, 168 (7th Cir. 1966). In determining whether service has been properly made, "the facts are viewed in a light most favorable to the non-moving party." *Pike*, 2005 WL 2100251, at *1. While affidavits and other documentary evidence may be considered by the Court, the burden rests on the plaintiff to demonstrate that the defendant has been properly served. *See id.*

**D. Discussion**

Beta Finance argues that the Amended Complaint filed by the Prime Time Litigants against it on November 13, 2007, in Case No. 3:08-CV-60, should be dismissed because the notice was not served within 120 days of being filed as required by Federal Rule of Civil Procedure 4(m).

If a party fails to give notice of the complaint within 120 days of being filed, Rule 4(m) requires that the court either dismiss the complaint without prejudice or order that service be made within a specified time. *See Geiger v. Allen*, 850 F.2d 330, 331 (7th Cir. 1988). An extension of the Rule 4(m) period may be granted by the Court if the plaintiff shows that process was not served to the defendant because of justifiable delay or excusable neglect. *See Coleman v. Milwaukee Bd. of Sch. Dirs.*, 290 F.3d 932, 934 (7th Cir. 2002).

The threshold requirement for a justifiable delay extension is good cause. *See Tso v. DeLaney*, 969 F.2d 373, 377 (7th Cir. 1992). Rule 4(m) states that "if the plaintiff shows good cause for the failure [to serve sufficient process], the court shall extend the time for service for an appropriate period of time." Good cause means a legitimate reason for the delay in process. *See Coleman*, 290 F.3d at 934. A determination whether good cause exists is fact sensitive and is "entrusted to the district court's discretion." *Troxell v. Fedders of North America, Inc.*, 160 F.3d 381, 383 (7th Cir. 1998). The courts have suggested that failure to serve sufficient process in light of a plaintiff's reasonable diligence or a defendant's evading service is sufficient to demand an extension of time pursuant to Rule 4(m). *See Coleman*, 290 F.3d at 934; *Pike*, 2005 WL 2100251, at *2.

But the "courts have been accorded discretion to enlarge the 120-day period 'even if there is no good cause shown.'" *Henderson v. United States*, 517 U.S. 654, 662 (1996). Accordingly, the Court may grant an extension for the plaintiff to serve process due to excusable neglect. *See Coleman*, 290 F.3d at 934. First, the plaintiff must offer an excuse for its failure to serve the defendant in pursuance to Rule 4(m). *See Pike*, 2005 WL 2100251, at *3 (denying the excusable neglect extension, even though the defendant had actual notice of the lawsuit and would not have been prejudiced by the late service, because plaintiff failed to offer an excuse). Next, the Court evaluates the "balance of harms" in light of the proffered excuse. *Id.* "In deciding whether

excusable neglect exists, the Court weighs factors such as the statute of limitations, prejudice to the defendant, actual notice, and eventual service." *Id.* (citing *Troxell*, 160 F.3d at 382).

In this case, the Prime Time Litigants fail to represent a good cause for its failure to serve notice within the 120-day period. And although the Prime Time Litigants correctly state that the courts in the Seventh Circuit extend the service time even when there is not good cause, the Prime Time Litigants have not shown that they used reasonable diligence in serving process or that Beta Finance evaded service. Without a legitimate reason for not serving process on Beta Finance within the Rule 4(m) period, the Court will not grant a justifiable delay extension.

Furthermore, the Prime Time Litigants fail to satisfy the requirements for this Court to grant an excusable neglect extension. The Prime Time Litigants attempt to justify an extension by suggesting that Beta Finance would not be prejudiced by the litigation, that it had actual notice of the claims before January 2, 2009, and that notice was eventually served. These arguments miss the point. Before weighing the balance of harms, the Prime Time Litigants must offer an excuse to the Court for not serving process within the Rule 4(m) period. Even if Beta Finance had actual notice of the claims against it, *Pike* clearly indicates that the plaintiff must offer an excuse for the delay. The Prime Time Litigants offer no such excuse and, therefore, an excusable neglect extension cannot be granted.

Furthermore, assuming that the Court was offered an excuse by the Prime Time Litigants for its failure to serve Beta Finance the balance of harms weighs in favor of Beta Finance. The Prime Time Litigants allege that Beta Finance would not be prejudiced by the late service because it received actual notice once DirectBuy was given notice. This argument relies on the fact that Beta Finance is a subsidiary of DirectBuy, located at the same address. However, DirectBuy and Beta Finance are two distinct legal entities. Serving process on one does not excuse process on the other—even if they were both aware of the litigation.

Since the statute of limitations for the claims raised by the Prime Time Litigants has not run, they will not lose the ability to pursue their claims in the future. Thus, the Court finds no basis on which to extend the Prime Time Litigants time to serve process.

**E. Conclusion**

The Court GRANTS Beta Finance's motion to dismiss (DE 134).

SO ORDERED on August 26, 2009.

__s/ Joseph S. Van Bokkelen_____  
JOSEPH S. VAN BOKKELEN  
UNITED STATES DISTRICT JUDGE